UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X

Love Altonio Brooks,

                    Petitioner,                    CV-99-2855 (CPS)

        - against -                                MEMORANDUM OPINION
                                                   AND ORDER
United States of America

                    Respondent.

-----------------------------------------X

SIFTON, Senior Judge.

        On December 19, 1996, movant *pro se* Love Altonio Brooks
was sentenced to two concurrent life sentences plus an additional
fifty years in prison.  Brooks was convicted, after a fourteen
week jury trial, of the following seven counts: arson in
violation of 18 U.S.C. § 884(I)(count 30), using and carrying a
destructive device in relation to a crime of violence in
violation of 18 U.S.C. § 924(c)(1) (count 31), conspiracy to
murder in aid of racketeering in violation of 18 U.S.C.
§ 1959(a)(5)(counts 32 and 33), murder in aid of racketeering in
violation of 18 U.S.C. § 1959(a)(1)(count 34), using and carrying
a firearm in relation to crimes of violence in violation of 18
U.S.C. § 924(c)(1)(count 35), and conspiracy to distribute and
possess with intent to distribute cocaine base and heroin in
violation of 21 U.S.C. § 846 (count 44).

        Following appeal of his conviction, Brooks filed a
petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255,

which was considered and denied by this Court on December 31, 2002. *See Brooks v. United States,* CV-99-2855 (CPS)(E.D.N.Y. December 31, 2002). Brooks now moves pursuant to: (1) Rule 60(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") to correct a clerical mistake relating to the certificate of appealability issued in this case; and (2) Rule 60(b) of the Fed. R. Civ. P. for reconsideration of this Court's December 2002 denial of his § 2255 petition. The government opposes the motions, and contends that the Rule 60(b) motion is a "disguised" successive § 2255 petition, which should be denied. For the reasons stated below, the motions are denied.

## BACKGROUND

The following facts are essentially undisputed. They are taken from court records, the parties' submissions in connection with the present motion, and the Memorandum and Order of this Court dated December 31, 2002, *Brooks v. United States,* CV-99-2855 (CPS)(E.D.N.Y. December 31, 2002)(hereinafter "December 2002 Opinion"), denying Brooks' § 2255 petition, familiarity with which is presumed.

### Evidence at Trial

Brooks, together with William and David Mora, Leo Contrera, and Jose Vega, was convicted after a fourteen-week trial in the fall of 1995 of participating in the Mora brothers' crack distribution gang (the "Mora gang" or the "gang") in

Brooklyn, New York. The evidence at trial detailed ten years of crack dealing by the Mora gang and the violence used by the gang in its attempt to maintain its territory, the specifics of which are described more fully in the December 2002 Opinion.

Brooks became involved in the gang's affairs several months before the gang came to an end. In the fall of 1993, a group of drug dealers operating out of the Fiorentino Housing Project (also known as the Pitkin projects) (the "Pitkin Projects crew") began to compete with the Mora gang, which had a sales operation or "spot" located at 361 Miller Avenue near the project. Because the Pitkin Projects crew had effectively shut down the nearby Mora spot and the Mora gang was losing revenue, toward the end of October 1993, William Mora planned an assault on the Pitkin Projects crew. Mora and Walter Richburg received information that the Pitkin Projects crew was receiving guns and crack from "Moe," the proprietor of "B-S Deli," located at 2286 Pitkin Avenue. At a meeting between William Mora, Richburg, Vega, and Brooks, Mora proposed to blow up Moe's store.

On October 28, 1993, William Mora, David Mora, Richburg, Vega, Brooks, and another gang worker, "Black Juice," assembled at a garage used by David Mora. David Mora distributed a Streetsweeper gun, Tech-9 automatic weapons, hoods, ski masks, and baseball caps. Richburg retrieved more guns and a grenade from David Mora's store. Brooks took the grenade from Richburg.

William Mora instructed him how to pull the pin. When Richburg, William Mora, Vega, and Brooks arrived at Moe's store, Brooks went inside and ordered a beer from a woman behind the counter named Christine Brown. When Brown turned to get Brooks's beer, Brooks pulled the pin on the grenade, rolled it across the counter, and fled. The grenade exploded, sending metal fragments throughout the store, destroying the plexiglass counter window and filling the store with smoke. As Brooks left the store, he shot at people standing in front. Meanwhile, Vega shot at people trying to escape following the explosion. Vega and Brooks then rejoined the others in the car and left the scene. Mora paid Vega and Brooks for their participation.

Evidence relating to Brooks' involvement in the incident came principally from accomplice Walter Richburg. Christine Brown, the woman working behind the counter at Moe's store, was unavailable to testify at trial. However, Brooks' counsel offered as evidence at trial two police reports ("DD-5 reports"), containing Ms. Brown's accounts of the incident, and the testimony of Special Agent William Mulligan, who testified that Ms. Brown failed to select Brooks' photograph from a photo array shown to her eighteen months after the incident.

<u>Conviction, Sentence and Direct Appeal</u>

The jury convicted Brooks of seven of the nine counts

on which he was charged in the indictment.[1]  He was thereafter
sentenced to life terms on count 34 and count 44, to consecutive
twenty- and thirty-year sentences on counts 35 and 31,
respectively, and to two concurrent ten-year sentences and one
concurrent twenty-year sentence on the remaining counts.

Subsequently, Brooks, together with his co-defendants,
perfected an unsuccessful appeal.  Brooks was represented by
different counsel on appeal than his trial counsel and also
submitted his own *pro se* reply brief.[2]   Brooks' conviction was
affirmed by summary order.  *See United States v. Mora*, 152 F.3d
921, 1998 WL 398802 (2d Cir. June 8, 1998) (unpublished opinion).
Brooks' conviction became final on September 7, 1998, when the
time period to seek certiorari elapsed.  *See e.g., Bryant v.
United States*, No. 99 Civ. 5736, 2000 WL 1818582, at *5 (S.D.N.Y.
Dec. 11, 2000).

## Brooks' § 2255 Petition

In May 1999, Brooks moved to vacate, set aside or
correct his sentence pursuant to 28 U.S.C. § 2255, which this
Court denied in a 33-page Memorandum and Order dated December 31,
2002, *Brooks v. United States,* CV-99-2855 (CPS)(E.D.N.Y. December

---

[1] Counts 38 and 39 were dismissed on the government's motion prior to
submission to the jury.

[2] Brooks challenged the sufficiency of the evidence, joined with his co-
defendants in claiming a *Brady* violation, and argued that his trial should
have been severed from that of the other defendants.

31, 2002).[3]  However, because Brooks raised a claim that his

sentence violated *Apprendi v. New Jersey,* 530 U.S. 466 (2000),

and because there was conflicting authority within this Circuit

as to the retroactive applicability of *Apprendi,* I granted a

certificate of appealability ("COA") limited to Brooks' *Apprendi*

claim.  The relevant portion of the Court's December 2002 Opinion

reads as follows:

> To appeal the denial of a habeas petition, petitioner
> must obtain a certificate of appealability.  *See* 28
> U.S.C. § 2253(c).  The grant of a certificate of
> appealability requires "a substantial showing of the
> denial of a constitutional right."  *Id.; Reyes v.
> Keane*, 90 F.3d 676, 680 (2d Cir. 1996).  This
> substantial showing is made if the issues raised are
> debatable among jurists of reason, if a court could
> resolve the issues differently, or if the questions
> presented are deserving of further proceedings...
> Insofar as there is conflicting authority within this
> circuit regarding the retroactive applicability of
> *Apprendi* on first petitions under Section 2255, a
> certificate of appealability will issue with respect to
> that question alone.

December 2002 Opinion at 32.  The Second Circuit affirmed this

Court's judgment in a summary order dated October 29, 2003.  *See*

*Brooks v. United States,* No. 03-2277 (Oct. 29, 2003).[4]

---

[3] Brooks raised thirteen claims in his habeas petition, including claims
that he was denied effective assistance of trial and appellate counsel, that
the prosecution acted improperly, and that the Court erred in making various
evidentiary rulings.  Brooks also filed four separate motions to amend his
petition pursuant to 28 U.S.C. § 2242, which were denied by the Court as time-
barred.  *Id.* at 19.

[4] In its summary order, the Second Circuit cited *Coleman v. United
States,* 329 F.3d 77, 90 (2d Cir.2003), which explained that *Apprendi* announced
a rule that is both "new and procedural but not watershed," and thus, not
retroactively applicable on collateral review.

**DISCUSSION**

Because Brooks is proceeding *pro se*, the court must afford his papers a "liberal reading" and "interpret them to raise the strongest arguments that they suggest." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir. 2003); *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999).

<u>Rule 60(a)</u>

Rule 60(a) provides, in relevant part, that "[c]lerical mistakes in judgments, orders and other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." Fed. R. Civ. P. 60(a).

As previously discussed, the Court granted a COA solely on Brooks' *Apprendi* claim. Brooks asserts that on January 28, 2003, he filed a notice of appeal and an application for a COA with respect to "the remaining issues of his 2255," but that the "Pro Se Writ Clerk (Mr. A. Rodriguez) erroneously returned the COA [application] with a letter stating that a certificate was already granted." (Brooks Motion at 2). Brooks submits a letter he received from "A. Rodriguez," the Pro Se Writ Clerk for the United States District Court for the Eastern District of New York, stating that Brooks' application for a COA and notice of appeal would be returned to him because "as noted in the docket

sheet, a Certificate of Appealability was [already] granted on
January 2, 2002 and a Notice of Appeal was filed under this
docket number on January 14, 2003." (Brooks Ex. A-1). The docket
entry referred to by the Pro Se Write Clerk reads in relevant
part: "Certificate of Appealability GRANTED in document #32, as
to Love Antonio Brooks (signed by Senior Judge Charles P. Sifton,
dated 12/30/02)." Document #32 refers to the Court's December
2002 Opinion denying Brooks' § 2255 petition. Brooks states that
he mailed his COA application to the Clerk of Court "three more
times, on Feb. 11, 2003, May 12, 2003 and Aug. 9, 2003." (Brooks
Mot. at 3). Although there is no docket entry reflecting these
filings, Brooks submits copies of certified mail receipts
reflecting their receipt by the Clerk's Office. (Brooks Motion
at 2; Brooks Ex. A-2, A-3).

Brooks argues that because the Second Circuit "had no
jurisdiction to deny the single issue placed before them until a
decision was made at the district level on the [COA]...the
mandate in this case must be recalled." (Brooks Motion at 3).
In requesting such relief, Brooks appears to misunderstand the
issue. A decision regarding the COA was made at the district
court level. Namely, I granted a COA solely on the *Apprendi*
claim, and denied a COA with respect the remaining claims. *See*
December 2002 Opinion at 32. Where a district court has declined
to issue a COA, the Court of Appeals "may nonetheless issue a

COA." *El Rhagi v. Artuz,* 309 F.3d 103, 106 (2d Cir.2002); *see also* 28 U.S. § 2253(c)(1)(permitting a "circuit justice or judge" to issue a certificate of appealability). Generally, the Clerk's Office of the District Court will transmit a petitioner's notice of appeal along with any accompanying motion for a COA to the Clerk's Office of the Court of Appeals. *See Beatty v. United States,* 292 F.3d 627, 630 n.1 (2d Cir.2002)(describing how the clerks' offices of the district courts handle the filings of *pro se* litigants). "If no express request for a COA is filed, the notice of appeal constitutes a request addressed to the judges of the court of appeals." *El Rhagi v. Artuz,* 309 F.3d at 106; citing Fed. R. App. P. 22(b)(2).

Here, the evidence suggests that the Clerk's Office of this Court mistakenly returned Brooks' application for a COA to him, rather than transferring it to the Second Circuit. However, this Court does not have jurisdiction to recall the mandate issued by the Second Circuit on October 29, 2003. For such relief, Brooks must make an application to the Second Circuit Court of Appeals.

## Rule 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to a relieve a party from final judgment. *See* Fed. R. Civ. P. 60(b). A motion pursuant to Rule 60(b) is "addressed to the sound discretion of the district court and [is]

generally granted only upon a showing of exceptional

circumstances." *Mendell, on Behalf of Viacom, Inc. V. Gollust,*

909 F.2d 724, 731 (2d Cir.1990). "Evidence in support of the

motion to vacate a final judgment [must] be highly convincing,"

*Kotlicky v. United States Fidelity Guar. Co.,* 817 F.2d 6, 9 (2d

Cir.1987); *Raposo v. United States,* 2005 WL 292750, at *2

(S.D.N.Y. 2005)(the "highly convincing" evidence requirement also

applies to *pro se* litigants)(citing cases).

"A true Rule 60(b) motion must be predicated on one of

five narrow and specific grounds or on a sixth ground which,

despite its open wording, has been narrowly cabined by the

precedent of this Court." *Harris,* 367 F.3d at 80. They include

the following:

> (1)mistake, inadvertence, surprise, or excusable
> neglect; (2) newly discovered evidence...;(3) fraud...;
> (4) the judgment is void;(5)the judgment has been
> satisfied, released or discharged, or a prior judgment
> upon which it is based has been reversed or otherwise
> vacated, or it is no longer equitable that the judgment
> should have prospective application; or (6) any other
> reason justifying relief from the operation of the
> judgment.

Fed. R. Civ.P. 60(b); *see also Harris,* 367 F.3d at 80; *Rodriguez,*

252 F.3d at 199. It is not clear from Brooks' submissions which

subsections he relies upon as grounds for his Rule 60(b) motion.

The government contends that Brooks' 60(b) motion is,

in actuality, a "disguised successive Section 2255 petition."

(Govt. Reply at 7). Thus, in assessing Brooks' claims, it must

be determined whether the motion is appropriately brought under
Rule 60(b).  The Second Circuit has explained that "a motion
under Rule 60(b) and a petition for habeas have different
objectives." *Rodriguez v. Mitchell,* 252 F.3d 191, 198 (2d Cir.
2001).  "Relief under Rule 60(b) is available with respect to a
previous habeas proceeding only when the Rule 60(b) motion
attacks the integrity of the habeas proceeding and not the
underlying criminal conviction." *Harris v. United States,* 367
F.3d 74, 77 (2d Cir.2004)(movant alleged ineffective assistance
of habeas counsel), *citing Rodriguez,* 252 F.3d at 198 (2d Cir.
2001); *see also Gitten v. United States,* 311 F.3d 529, 534 (2d
Cir. 2002).  If the motion relates to the integrity of the
conviction (or sentence) and not the prior habeas proceeding,
then the motion is, in actuality, a successive § 2255 petition
and must meet the criteria set forth in the Antiterrorism and
Effective Death Penalty Act of 1996 (AEDPA).[5]  *Id.*  In *Gitten,*
the Second Circuit cautioned district courts "not [to]
recharacterize a portion of the 60(b) motion as a second or
successive collateral attack and transfer it...until the prisoner
has been informed of the district court's intent to transfer and
afforded a sufficient opportunity to avoid the transfer." *Gitten,*

---

[5]  To file a second or successive § 2255 motion, the movant must first
file an application with the appropriate court of appeals for an order
authorizing the district court to consider it.  *See* 28 U.S.C. § 2255; 28
U.S.C. § 2244(b)(3)(A).

311 F.3d at 534.  However, "the court always has the alternative
of simply denying, as beyond the scope of Rule 60(b)...the
portion believed to present new attacks on the conviction."  *Id.*

<u>Analysis of Brooks' Claims</u>

Brooks presents two main arguments in his Rule 60(b)
motion: that his Sixth Amendment right to confront witnesses was
violated, and that both his trial and appellate counsel provided
ineffective assistance.  These arguments are addressed in turn.

*Confrontation Clause*

The Confrontation Clause of the United States
Constitution states in relevant part that "[i]n all criminal
prosecutions, the accused shall enjoy the right...to be
confronted with the witnesses against him..."  U.S. Const. amend.
VI.  Citing *Crawford v. Washington,* 541 U.S. 36 (2004),[6] Brooks
asserts that multiple events at trial violated his right of
confrontation.  First, he points to the admission of a DD-5
police report, which contained Ms. Brown's account of the grenade
attack.  At trial, it was Brooks' counsel who sought to introduce
the report into evidence.  However, Brooks now argues that the

---

[6] In *Crawford*, the Supreme Court held that out-of-court statements of a
person who does not appear as a witness at trial that are of a "testimonial"
nature are inadmissible against a criminal defendant unless the witness is
unavailable to testify at trial and the criminal defendant had a prior
opportunity for cross examination. *Id.* at 53-54.  Although the Supreme Court
expressly refrained from defining "testimonial," the Supreme Court suggested
that the term was intended to include "sworn evidentiary statements such as
affidavits, depositions, grand jury testimony and trial testimony as well as
unsworn declarations given to the police."  *Mungo v. Duncan,* 393 F.3d 327, 333
n.2 (2d Cir.2004).

police report should have been excluded in its entirety because
it deprived him of his right of confrontation. (Brooks Mot. at
5). Brooks also cites Ms. Brown's failure to identify his
photograph in a photo array, and her failure to testify at trial
as events which deprived him of his right of confrontation.
Brooks further argues that the prosecutor's summation violated
his right of confrontation, because the government offered
various explanations as to why Ms. Brown might have failed to
identify his photo. Finally, in a supplemental submission to the
Court, Brooks contends that the Court's use of a Presentence
Investigation Report (PSR) during sentencing violated his right
of confrontation.

    Brooks acknowledges that he did not raise any
Confrontation Clause claims in his habeas petition.[7] He argues
that his previous failure to invoke the Confrontation Clause was
"a mistake, or inadvertence" on his part, which should be excused

---

[7] However, Brooks states that he has "repeatedly challenged" the DD-5
report. (Brooks Mot. at 8). In his § 2255 petition, Brooks challenged the
Court's evidentiary ruling to redact from the police report a statement made
by Ms. Brown that she could possibly identify the attacker. (*See* Brooks § 2255
Motion at Ground Six). The Court dismissed Brooks' claim on the ground that
"the Court's exercise of its discretion in deciding a single evidentiary issue
does not meet th[e] high threshold for collateral review." (December 2002
Opinion at 25-26). Here, Brooks presents a new and entirely different claim
in regards to the DD-5 police report. He now argues that the police report
should have been excluded in its entirety (despite the fact that it was
defense counsel who introduced the document into evidence) because of the
Supreme Court's holding in *Crawford* that an out-of-court testimonial statement
is inadmissible against a criminal defendant unless the witness is unable to
testify and the defendant had a prior opportunity for cross examination. As
this claim does not attack the integrity of his habeas proceeding, but rather,
presents a new ground for challenging his underlying conviction, it is beyond
the scope of a Rule 60(b) motion. *See Gitten,* 311 F.3d at 534.

by this Court. (Brooks Mot. at 8). This argument is unavailing.
The mere failure to raise a claim in a prior proceeding, without
more, does not constitute "mistake, inadvertence...or excusable
neglect" warranting relief under Rule 60(b)(1). *See* Wright,
Miller & Kane, *Federal Practice and Procedure*, Civil 2d § 2858 at
276-278 ("The party must make some showing of why he was
justified in failing to avoid mistake or inadvertence...Ignorance
of the rules is not enough, nor is ignorance of the law."). 
Because these claims present new attacks on the integrity of the
criminal trial and conviction rather than the integrity of the
habeas proceeding, they are denied as "beyond the scope of Rule
60(b)." *Gitten,* 311 F.3d at 534. If Brooks wishes to have the
substance of these challenges considered, he must gain the
authorization of the Second Circuit Court of Appeals for leave to
file a second or successive § 2255 petition.[8]

### Ineffective Assistance

A claim of ineffective assistance of counsel requires a
showing that counsel's performance fell "below an objective
standard of reasonableness," and "the deficient performance
prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668,
687-88 (1984). Brooks claims that his trial counsel rendered

---

[8] These claims are, however, unlikely to succeed on their merits. In the
first place, it is unclear how the *Crawford* decision, on which Brooks bases
these new claims, applies either to the prosecutor's comments during summation
or this Court's use of a PSR during sentencing. Moreover, the Second Circuit
recently held in *Mungo v. Duncan,* 393 F.3d 327 (2d Cir.2004) that *Crawford*
should not be applied retroactively on collateral review.

ineffective assistance by: (1) "failing to request a continuance in order to find the witness"; and (2) by "submitting the DD-5 [police] report, denying his client his Sixth Amendment right to confront the witness." (Brooks Mot. at 6). Brooks also claims that his appellate counsel rendered ineffective assistance because he failed to raise the issue of trial counsel's ineffectiveness on direct appeal despite providing affirmations that he would do so. (Brooks Mot. at 7).

In regards to the first ineffective assistance claim, that trial counsel "fail[ed] to request a continuance in order to find the witness," Brooks' motion does not identify the witness that trial counsel failed to find. However, the government's reply memorandum suggests that this refers to Christine Brown, and Brooks' reply memorandum does not contradict this assertion. A similar argument was considered and rejected by the Court in its December 2002 Opinion denying Brooks' § 2255 petition. In so ruling, the Court determined that "the record clearly indicates that counsel did attempt, albeit unsuccessfully, to locate Ms. Brown; [his] failure to do so does not constitute 'objectively unreasonable' conduct." December 2002 Opinion, at 28, n.17.

Brooks does not allege any impropriety in the Court's previous finding. Rule 60(b) motions must not be used as a means by which the movant can relitigate issues already decided in his case. *See Shrader v. CSX Trans., Inc.,* 70 F.3d 255, 257 (2d Cir.

1995). The standard for granting a reconsideration motion is
"strict" and "will generally be denied unless the moving party
can point to controlling decisions or data that the court
overlooked...that might reasonably be expected to alter the
conclusions reached by the court." *Id.* Brooks fails to meet
this standard. Brooks does not identify any information or
controlling decisions that were overlooked and that would lead
the Court to alter its conclusion that trial counsel attempted to
locate Ms. Brown, and counsel's failure to locate this
unavailable witness was not "objectively unreasonable."

Brooks' second ineffective assistance claim, that trial
counsel's submission of the DD-5 police report deprived Brooks of
his Sixth Amendment confrontation right, was not raised in the
previous habeas proceeding.[9] Because this claim does not attack
the integrity of the habeas proceeding, it is denied as beyond
the scope of a 60(b) motion. *See Gitten,* 311 F.3d at 534. If
Brooks wishes to have the substance of this challenge considered,
he must gain the authorization of the Second Circuit Court of
Appeals for leave to file a second or successive § 2255 petition.

Finally, Brooks claims that his appellate counsel
rendered ineffective assistance because he failed to raise the

---

[9] In fact, this new claim directly contradicts a claim raised by Brooks
in his § 2255 petition that the DD-5 police report should have been introduced
in its entirety and that the Court erred in redacting a statement from the
report. (*See* Brooks § 2255 Mot. at Ground Six).

issue of trial counsel's ineffectiveness on direct appeal despite informing Brooks that he would do so. Brooks submits a letter he received from appellate counsel, Harry Bachelder, Jr., which reads in the relevant part as follows: "We will be raising the issue of ineffective assistance of counsel but we believe that much of what Mr. Grossman [trial counsel] did was within the parameters of *Strickland v. Washington*." (Brooks Mot. Ex. B-2). While this specific argument was not raised in the previous habeas proceeding, Brooks did argue that appellate counsel was ineffective for failing to "raise various issues on direct appeal." (*See* Brooks § 2255 Mot. at Ground One). In rejecting this claim I determined that:

> Petitioner's appellate counsel raised several non-frivolous claims in the Court of Appeals on petitioner's behalf. Although ultimately unavailing, petitioner cannot demonstrate that his counsel's failure to raise every conceivable issue on appeal was objectively unreasonable, as required by the first prong of the ineffective assistance analysis ...Likewise, petitioner cannot satisfy the second prong, that he was prejudiced by counsel's failure to raise such claims. As the Court of Appeals noted in deciding petitioner's appeal, the evidence against petitioner and his codefendants was compelling. *United States v. Mora,* 152 F.3d 921, 1998 WL 298802 at *2 (2d Cir.1998)(unpublished opinion). In the face of such evidence, it is unlikely that any additional claims petitioner might brought on appeal would have resulted in a different disposition.

December 2002 Opinion at 21-22. In the present motion, Brooks fails to identify which ineffective assistance claims should have been raised by appellate counsel. Moreover, even assuming that

appellate counsel's failure to raise the issue was objectively unreasonable, Brooks fails to show prejudice. That is, Brooks has not demonstrated that if ineffective assistance claims had been raised on appeal, there is a reasonable probability that the Court of Appeals' disposition would have been different. *See Strickland,* 466 U.S. at 694. Accordingly, the claim is denied.

**CONCLUSION**

For the foregoing reasons, the motions are denied. The Clerk is directed to send a copy of this decision to the movant and counsel for the United States.


SO ORDERED.

Dated :   Brooklyn, New York
          August 26, 2005


              By: /s/ Charles P. Sifton (electronically signed)
                  United States District Judge